**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>NORTH AMERICAN ASSET MANAGEMENT, LLC, ALEXI BETHEL, and STEVEN LABADIE,<br><br>     Defendants. | Case No. 0:16-cv-60093<br><br>**Complaint for Injunctive and Other Equitable Relief, Restitution, and Civil Monetary Penalties Under the Commodity Exchange Act** |

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") alleges as follows:

### I. SUMMARY

1. From at least March 2012, and continuing through at least March 2013 (the "Relevant Period"), Defendant North American Asset Management, LLC ("NAAM"), by and through the actions of its employees and agents, including but not limited to Defendants Alexi Bethel ("Bethel") and Steven Labadie ("Labadie") (collectively, "Defendants"), entered into, offered to enter into, or conducted any office or business in the United States for the purpose of soliciting or accepting any order for the purchase or sale of precious metals from retail customers on a leveraged or financed basis. These transactions constituted illegal, off-exchange retail commodity transactions. By this conduct, Defendants have engaged, are engaging, or are about to engage in conduct that violates Sections 4(a) and 4d(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6(a) and 6d(a) (2012).

2. Bethel and Labadie controlled NAAM throughout the Relevant Period and failed to act in good faith or knowingly induced NAAM's violations alleged herein. Bethel and

Labadie are therefore liable for NAAM's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

3. At all relevant times, the acts and omissions of Labadie and Bethel and others were committed within the scope of their employment, agency, or office with NAAM. Therefore, NAAM is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation ("Regulation") 1.2, 17 C.F.R. § 1.2 (2015), as a principal for the actions and omissions of Labadie and Bethel, and any other manager, employee, or agent of NAAM, in violation of the Act.

4. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices, to compel compliance with the Act, and to further enjoin Defendants from engaging in any commodity-related activity.

5. In addition, the Commission seeks civil monetary penalties, restitution, and remedial ancillary relief, including but not limited to, trading and registration bans, disgorgement, rescission, prejudgment and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or similar acts and practices, as more fully described below.

## II.   JURISDICTION AND VENUE

7. Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

8. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2)(D) and 6c of the Act, 7 U.S.C. §§ 2(c)(2)(D) and 13a-1 (2012).

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants transacted business in this District, and certain transactions, acts, and practices alleged in this Complaint occurred, are occurring, or are about to occur within this District.

### III. THE PARTIES

#### A. Plaintiff

10. Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq*. (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2015).

#### B. Defendants

11. Defendant North American Asset Management, LLC is a Florida limited liability company formed in April 2011. NAAM's principal place of business was Ft. Lauderdale, Florida. NAMM ceased doing business in March 2013, but between March 2012 and March 2013, NAAM operated as a telemarketing firm that solicited retail customers to invest in off-exchange retail commodity transactions. NAAM has never been registered with the Commission in any capacity.

12. Defendant Alexi M. Bethel is a resident of Miami, Florida. Bethel was an owner, president, and controlling person of NAAM, overseeing its day-to-day operations. Bethel has never been registered with the Commission in any capacity.

13. Defendant Steven Labadie is a resident of Lake Worth, Florida. Labadie was an owner, managing director, and controlling person of NAAM. Labadie has never been registered with the Commission in any capacity.

## IV.   RELATED ENTITIES

14. NAAM introduced customers to Hunter Wise Commodities, LLC ("Hunter Wise"), a precious metals dealer that confirmed the execution of customer precious metal transactions, directly or through Lloyds Commodities, LLC ("Lloyds"). Hunter Wise was formed as a California company in July 2007 and registered as a Nevada company in October 2010. It maintained business addresses in Las Vegas, Nevada and Irvine, California. Hunter Wise held itself out on its website as "a physical commodity trading company, wholesaler, market maker, back-office support provider, and finance company." Hunter Wise purported to offer, enter into, and confirm the execution of retail commodity transactions involving gold, silver, platinum, palladium, and copper throughout the United States using a network of telemarketing solicitors that it referred to as "dealers." Hunter Wise has never been registered with the Commission.

15. On February 19, 2014, a court in this District, in an action captioned *CFTC v. Hunter Wise Commodities, LLC*, held that Hunter Wise and other defendants violated Section 4(a) of the Act, 7 U.S.C. § 6(a), the prohibition on off-exchange trading of retail commodity transactions like the ones at issue here. The court granted summary judgment in favor of the Commission. 1 F. Supp. 3d 1311, 1322 (S.D. Fla. 2014).

16. Lloyds is a Florida limited liability company with its principal place of business in Palm Beach Gardens, Florida. Lloyds was an intermediary firm that recruited precious metals

dealers to solicit customers who would execute retail commodity transactions through Hunter Wise. Lloyds has never been registered with the Commission.

17. NAAM also introduced customers to AmeriFirst Management LLC ("AmeriFirst"), which held itself out as a precious metals wholesaler and clearing firm. AmeriFirst purported to confirm the execution of customer off-exchange retail commodity transactions.

18. AmeriFirst described itself on its website as a precious metals clearing and financing firm for precious metals dealers and claimed to provide dealers with "tangible assets in a growing physical market[.]" AmeriFirst guaranteed that "every ounce of metal in [the dealer's] customers [sic] account exists and is ready for delivery at any point and time." On its website, AmeriFirst offered gold, silver, and platinum in bar and coin form. AmeriFirst also claimed to provide customer financing options for precious metals dealers like NAAM. Like Hunter Wise, NAAM operated throughout the United States using a network of solicitation firms referred to as "dealers."

19. On February 25, 2013, AmeriFirst closed its operations.

20. On September 17, 2013, this Court, in an action captioned *CFTC v. AmeriFirst Management LLC,* entered a Consent Order of Permanent Injunction Against AmeriFirst, finding that AmeriFirst violated Sections 4(a), 4b(a)(2), 4d(a), and 6(c)(1) of the Act, 7 U.S.C. §§ 6(a), 6b(a)(2), 6d(a), and 9(1). Case No. 13-cv-61637-WPD (S.D. Fla. Sept. 17, 2013) (Doc. # 17). In the Consent Order, AmeriFirst neither admitted nor denied its violations of the Act. *Id.*

## V.    STATUTORY BACKGROUND

21. Section 2(c)(2)(D) of the Act, 7 U.S.C. §2(c)(2)(D), gives the Commission jurisdiction over "any agreement, contract, or transaction in any commodity" that is entered into

with, or offered to, a non-eligible contract participant "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis" ("retail commodity transactions") with respect to conduct occurring on or after July 16, 2011, subject to certain exceptions not applicable here.  Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D), makes Section 4(a) of the Act, 7 U.S.C. §§ 6(a), applicable to retail commodity transactions "as if" such transactions are contracts for the sale of a commodity for future delivery.

22. The Act defines an eligible contract participant ("ECP"), in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.  Section 1(a)(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi) (2012).  During the Relevant Period, NAAM solicited non-ECP customers to enter into retail commodity transactions and executed retail commodity transactions with non-ECP customers.

23. Section 4(a) of the Act, 7 U.S.C. § 6(a), in relevant part, makes it unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

24. Section 4d(a) of the Act, 7 U.S.C. § 6d(a), in relevant part, provides that it shall be unlawful for any person to be a futures commission merchant ("FCM") unless such person shall have registered with the Commission as an FCM.  In pertinent part, Regulation 1.3(p), 17

C.F.R § 1.3(p), defines an FCM as "[a]ny individual, association, partnership, corporation, or trust . . . engaged in soliciting or in accepting orders for . . . any agreement, contract, or transaction described in section 2(c)(2)(C)(i) or section 2(c)(2)(D)(i) of the Act . . . ." *See also* Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012) (defining an FCM).

## VI.   FACTS

25.   During the Relevant Period, NAAM operated as a telemarketing firm that solicited retail customers to engage in off-exchange retail commodity transactions involving leveraged precious metals.  Although NAAM also offered precious metals on a fully-paid basis, the majority of its business was in off-exchange retail commodity transactions.  Only NAAM's off-exchange retail commodity transactions through Hunter Wise, Lloyds, and AmeriFirst are at issue here.

26.   At all times during the Relevant Period, Bethel was an owner, president, and controlling person of NAAM.  Bethel exercised control over the day-to-day operations of NAAM, was a signatory on and opened NAAM bank accounts, and entered into agreements on behalf of NAAM.

27.   At all time during the Relevant Period, Labadie was an owner, managing director, and controlling person of NAAM.  Labadie supervised NAAM office staff and signed documents on behalf of NAAM.

28.   At various times during the Relevant Period, NAAM employed Bethel and Labadie and other individuals to, among other things, solicit retail customers to engage in off-exchange retail commodity transactions.  Bethel and Labadie directly solicited retail customers to engage in off-exchange retail commodity transactions and managed the solicitation of funds by other NAAM employees.

29.     Bethel and Labadie and NAAM's other employees conducted nearly all of their solicitations by telephone.  When soliciting customers for off-exchange retail commodity transactions, Bethel and Labadie and NAAM's other employees represented that to purchase a certain quantity of metal, customers needed to deposit a percentage of the total metal value and arrange for a loan for the remaining amount.  Hunter Wise, Lloyds, or AmeriFirst provided the financing for the loans to the customers.  However, NAAM did not disclose to all of its customers the involvement of Hunter Wise, Lloyds, or AmeriFirst in the off-exchange retail commodity transactions.

30.     After a customer invested, NAAM contacted Hunter Wise, Lloyds, or AmeriFirst to accomplish the transaction.  NAAM collected the funds needed for the transaction from the customer and sent them to Hunter Wise, Lloyds, or AmeriFirst.  Hunter Wise and AmeriFirst provided back office support services to NAAM and customer access to the details of the transaction.

31.     With respect to retail commodity transactions, NAAM charged customers commissions, storage and other fees for purchasing the metal, and interest on loans to buy metal. Hunter Wise and Lloyds provided NAAM's share of the commissions and fees to NAAM after receiving the customer's funds from NAAM.  AmeriFirst initially provided NAAM's share of the commissions and fees to NAAM after receiving the customer's funds.  Later, AmeriFirst directed NAAM to deduct its commissions and fees from customer funds before forwarding those funds to AmeriFirst.

32.     In the leveraged precious metals transactions at issue, NAAM's customers did not take delivery of precious metals.

33. During the Relevant Period, NAAM collected at least $2,565,272 from at least 66 of its customers in connection with retail commodity transactions. Of this amount, $648,759.60 was paid to NAAM in the form of commissions, markups, storage fees, and interest charges.

34. NAAM, Hunter Wise, Lloyds, and AmeriFirst never bought, sold, loaned, stored, or transferred any physical metals for the off-exchange retail commodity transactions at issue. Likewise, NAAM, Hunter Wise, Lloyds, and AmeriFirst never delivered any precious metals to any customers in connection with the financed metals transactions at issue.

### VII. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

#### COUNT I
#### ILLEGAL OFF-EXCHANGE TRADING
#### Violations of 7 U.S.C. § 6(a)

35. Paragraphs 1 through 34 of this Complaint are realleged and incorporated herein by reference.

36. During the Relevant Period, the retail commodity transactions described in this Complaint were offered and entered into by Defendants (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, (b) with persons who are not ECPs or eligible commercial entities as defined by the Act, and (c) without being made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market.

37. The retail commodity transactions described in this Complaint involve commodities as defined in Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012).

38. As set forth above, during the Relevant Period, Defendants NAAM, Bethel, and Labadie violated Section 4(a) of the Act, 7 U.S.C. § 6(a), by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States

for the purpose of soliciting or accepting orders for, or otherwise dealing in, any transaction in, or in connection with, retail commodity transactions.

39. Each offer to enter into, execution, confirmation, solicitation, or acceptance of an order for a retail commodity transaction made during the Relevant Period to a non-ECP customer is alleged as a separate and distinct violation of Section 4(a) of the Act, 7 U.S.C. § 6(a).

40. Bethel and Labadie directly or indirectly controlled NAAM and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting NAAM's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a). Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Bethel and Labadie are therefore liable for each of NAAM's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a).

41. The acts and omissions of Bethel and Labadie and other managers, agents, and other persons acting for NAAM described in this Complaint were done within the scope of their employment, agency, or office with NAAM. Therefore, NAAM is liable as a principal for each act, omission, or failure of Bethel and Labadie and NAAM's other managers, agents, and persons acting for NAAM, constituting violations of Section 4(a) of the Act, 7 U.S.C. § 6(a), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## COUNT II
## FAILURE TO REGISTER
### Violations of 7 U.S.C. § 6d(a)

42. Paragraphs 1 through 41 of this Complaint are realleged and incorporated herein by reference.

43. During the Relevant Period, NAAM, through its managers, agents, and employees, acted as an FCM by soliciting and accepting orders for agreements, contracts, or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (*i.e.,* retail

commodity transactions) and, in or in connection with those transactions, accepted at least $2,565,272 from its customers.

44. Section 4d(a) of the Act, 7 U.S.C. § 6d(a), provides that it shall be unlawful for any person to be an FCM unless such person shall have registered with the Commission as an FCM.

45. During the Relevant Period, NAAM failed to register with the Commission as an FCM and therefore violated Section 4d(a), 7 U.S.C. § 6d(a).

46. Bethel and Labadie directly or indirectly controlled NAAM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting NAAM's violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a).  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Bethel and Labadie are therefore liable for each of NAAM's violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a).

47. The acts and omissions of Bethel and Labadie and other managers, agents, and other persons acting for NAAM described in this Complaint were done within the scope of their employment, agency, or office with NAAM.  Therefore, NAAM is liable as a principal for each act, omission, or failure of Bethel and Labadie and NAAM's other managers, agents, and persons acting for NAAM, constituting violations of Section 4d(a) of the Act, 7 U.S.C. § 6d(a), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

### VIII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

    A.    An Order finding that Defendants violated Sections 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a);

B. An Order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of Sections 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a);

C. An Order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from directly or indirectly:

1) Trading on, or subject to the rules of, any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015)) for their own personal accounts or for any account in which they have a direct or indirect interest;

3) Having any commodity interests traded on their behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015);

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent, or any other officer or employee of any

     person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

  8)  Engaging in any business activities related to commodity interests.

D.  An Order directing Defendants, as well as any successors, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices described herein that constitute violations of the Act, prejudgment interest from the date of such violations, and post-judgment interest;

E.  An Order directing Defendants, as well as any successors, to make full restitution, pursuant to such procedure as the Court may order, to every customer whose funds Defendants received or caused another person or entity to receive as a result of the acts and practices described herein which constitute violations of the Act, prejudgment interest from the date of such violations, and post-judgment interest;

F.  An Order directing Defendants, as well as any successors, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether express or implied, entered into between Defendants and any of the customers whose funds were received by Defendants as a result of the acts and practices which constitute violations of the Act, as described herein;

G.  An Order directing Defendants, as well as any successors, to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of (1) triple the monetary gain to Defendants for each violation of the Act; or (2) $140,000 for each violation committed, plus post-judgment interest;

H.  An Order directing Defendants, as well as any successors, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

I.  Such other and further relief as the Court deems proper.

Dated:  January 15, 2016

Respectfully submitted,

s/ Jeffrey Le Riche
Jeffrey Le Riche
FL Special Bar # A5501829
Jennifer J. Chapin
FL Special Bar # A5501782
James M. Humphrey IV
FL Special Bar # A5502133
U.S. Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7751

Attorneys for Plaintiff