UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 16-60093-CIV-MARTINEZ-GOODMAN

U.S. COMMODITY FUTURES TRADING
COMMISSION,

   Plaintiff,

vs.

NORTH AMERICAN ASSET
MANAGEMENT, LLC, et al.,

   Defendants.
_____/

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS NORTH AMERICAN ASSET MANAGEMENT, LLC, ALEXI BETHEL, AND STEVEN LABADIE

### I.   INTRODUCTION

On January 15, 2016, Plaintiff U.S. Commodity Futures Trading Commission (the Commission or CFTC), filed a Complaint against Defendants North American Asset Management, LLC (NAAM), Alexi Bethel, and Steven Labadie seeking injunctive and other equitable relief, as well as civil monetary penalties, for violations of the Commodity Exchange Act (Act), 7 U.S.C. §§ 1 *et seq.* (2012), and Commission Regulations (Regulations), 17 C.F.R. §§ 1.1 *et seq.* (2016). Specifically, the Commission charged Defendants with violating Sections 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a), in connection with illegal off-exchange transactions involving the purported purchase or sale of physical metals on a leveraged, margined, or financed basis (Retail Commodity Transactions).

## II.     CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants NAAM, Bethel, and Labadie without a trial on the merits or any further judicial proceedings, NAAM, Bethel, and Labadie hereby:

1.     Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and other Equitable Relief Against NAAM, Bethel, and Labadie (Consent Order);

2.     Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.     Acknowledge service of the summons and Complaint;

4.     Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (2012);

5.     Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6.     Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7.     Waive:

   a.     any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2016), relating to, or arising from, this action;

   b. any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

   c. any claim of Double Jeopardy based on the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   d. any and all rights of appeal from this action;

 8. Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if NAAM, Bethel, and Labadie now or in the future reside outside the jurisdiction of this Court;

 9. Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waive any objection based thereon;

 10. Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. NAAM, Bethel, and Labadie shall undertake all steps

necessary to ensure that all of their agents and employees under their authority and control understand and comply with this paragraph 10.

11. By consenting to the entry of this Consent Order, neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which they admit. Further, Defendants agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2012), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 – 3.75 (2016); and/or (c) any proceeding to enforce the terms of this Consent Order.

12. Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 60 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

13. Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

### III. FINDINGS AND CONCLUSIONS

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, civil

monetary penalty, and other equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

*(1)    Parties to this Consent Order*

14.    Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2016).

15.    Defendant North American Asset Management, LLC is a Florida limited liability company formed in April 2011. NAAM was administratively dissolved in August 2013. NAAM was a telemarketing firm that solicited retail customers to engage in financed transactions in precious metals. NAAM's principal place of business was Fort Lauderdale, Florida. NAAM has never been registered with the Commission in any capacity.

16.    Defendant Alexi Bethel is an individual whose last known address was in Miami Beach, Florida. Bethel was an owner, principal, and controlling person of NAAM, overseeing its day-to-day operations. Bethel has never been registered with the Commission in any capacity.

17.    Defendant Steven Labadie is an individual whose last known address was in Lake Worth, Florida. Labadie was an owner, principal, and controlling person of NAAM, overseeing its day-to-day operations. Labadie has never been registered with the Commission in any capacity.

### *(2)* **Other Relevant Entities**

18. Hunter Wise Commodities, LLC was formed as a California limited liability company in July 2007 and registered as a Nevada company in October 2010. Hunter Wise maintained business addresses in Irvine, California and Las Vegas, Nevada.

19. Hunter Wise held itself out on its website as "a physical commodity trading company, wholesaler, market maker, back-office support provider, and finance company." Hunter Wise purported to offer, enter into, and confirm the execution of Retail Commodity Transactions involving gold, silver, platinum, palladium, and copper throughout the United States using a network of telemarketing solicitation firms that it referred to as "dealers."

20. On February 19, 2014, a court in this District, in an action captioned *CFTC v. Hunter Wise Commodities, LLC*, held that Hunter Wise and other defendants violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), the prohibition on off-exchange trading of Retail Commodity Transactions like the ones at issue here. The Court granted summary judgment in favor of the Commission. 1 F. Supp. 3d 1311, 1322 (S.D. Fla. 2014).

21. Lloyds Commodities, LLC, a Florida company, operated as an intermediary firm between precious metals dealers like NAAM, and Hunter Wise. NAAM introduced its customers to Hunter Wise directly or through Lloyds.

22. AmeriFirst Management LLC is a Florida limited liability company formed in October 2011. AmeriFirst operated throughout the United States using a network of over 30 solicitation firms referred to as "dealers," including NAAM. AmeriFirst held itself out as a precious metals wholesaler and clearing firm, claiming to provide customer financing options for precious metals dealers like NAAM. From at least March 2012 through at least March 2013 (the Relevant Period), AmeriFirst purported to confirm the execution of precious metal transactions

that customers executed through precious metals dealers such as NAAM. AmeriFirst ceased operations on February 25, 2013.

23. On September 17, 2013, a court in this District, in an action captioned *CFTC v. AmeriFirst Management LLC*, No. 13-cv-61637-WPD (S.D. Fla. Sept. 17, 2013) (ECF No. 17), entered a consent order against AmeriFirst, finding that it violated Sections 4(a), 4b(a)(2), 4d(a), and 6(c)(1) of the Act, 7 U.S.C. §§ 6(a), 6b(a)(2), 6d(a), and 9(1) (2012). In the consent order, AmeriFirst neither admitted nor denied its violations of the Act.

### *(3)* **Defendants' Illegal Financed Precious Metals Business**

24. During the Relevant Period, the Defendants solicited members of the general public through various means, including but not limited to, an internet website, promotional materials, and telephone calls. The Defendants solicited potential retail customers to purchase physical metals, including gold, silver, and platinum, on a leveraged, margined, or financed basis. Although NAAM also offered precious metals on a fully-paid basis, the vast majority of its business involved off-exchange financed metals transactions.

25. Defendants' solicitations included representations that customers should deposit a percentage of the total metal value, and secure a loan for the remaining amount, in order to purchase more metal through leverage. NAAM introduced its customers to Hunter Wise and AmeriFirst, which provided the financing for the loans to the customers.

26. After a customer invested, NAAM contacted Hunter Wise (through Lloyds) or AmeriFirst to carry out the transaction. NAAM collected the necessary funds and sent them to Hunter Wise (through Lloyds) or AmeriFirst. Lloyds purportedly forwarded the funds it received from NAAM to Hunter Wise. For their part, Hunter Wise and AmeriFirst provided back office support services and customer access to the details of the transaction.

27. For the financed precious metals transactions, NAAM charged customers commissions, storage and other fees, and interest on loans. For Hunter Wise, either it or Lloyds provided NAAM's share of the commissions and fees to NAAM after receiving the customer's funds from NAAM. For AmeriFirst, it initially provided NAAM's share of the commissions and fees to NAAM after it received the customer funds from NAAM. Later in the relationship, NAAM deducted the commissions and fees before forwarding the customer funds to AmeriFirst.

28. None of NAAM's financed precious metals customers took actual delivery of precious metals in connection with the Retail Commodity Transactions at issue. NAAM's customers neither possessed nor controlled any physical metals as a result of these Retail Commodity Transactions.

29. NAAM, Hunter Wise, Lloyds, and AmeriFirst never bought, sold, loaned, stored, or transferred any physical precious metals as part of the Retail Commodity Transactions at issue. They also did not deliver any physical precious metals to any retail-commodity-transaction customers.

30. At least some, if not all, of Defendants' financed-precious-metals-transaction customers did not qualify as "eligible contract participants" as defined in 7 U.S.C. § 1a(18)(xi) (2012).

31. Defendants' financed precious metals transactions were not conducted on or subject to the rules of a board of trade which has been designated by or registered with the CFTC.

32. During the Relevant Period, NAAM collected at least $2,565,272 from its retail-commodity-transaction customers. At least $648,759.60 of that amount was retained by NAAM as commissions, storage or other fees, or interest charges.

33. In addition to overseeing NAAM's day-to-day operations as owners and principals, Defendants Alexi Bethel and Steven Labadie had signatory authority over NAAM's bank accounts. Bethel and Labadie also had the authority to bind NAAM in contractual agreements, and to hire and fire employees. Finally, Bethel and Labadie not only solicited customers themselves, but they managed NAAM employees who solicited customers to finance their purported precious metals purchases.

## B. Conclusions of Law

### (1) Jurisdiction and Venue

34. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring any action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation, or order thereunder.

35. The Commission has jurisdiction over the solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012).

36. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants reside in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

### (2) Violations of Section 4(a) of the Act – Off-Exchange Retail Precious Metals Transactions

37. Under Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), it is unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business

anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

38. During the Relevant Period, Defendants' Retail Commodity Transactions described in the Complaint (ECF No. 1), and this Consent Order's Findings of Fact, were offered and entered into (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis; (b) with persons who are not eligible contract participants or eligible commercial entities as defined by the Act; and (c) the transactions were not made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market.

39. By offering and entering into these Retail Commodity Transactions, Defendants violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

40. The foregoing acts, omissions, and failures of Bethel, Labadie, and other employees occurred within the scope of their employment, agency, or office with NAAM. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016), these acts, omissions, and failures are deemed those of NAAM, which is liable as principal for these acts, omissions, and failures.

### *(3)* **Violations of Section 4d(a) of the Act – Failure to Register as a Futures Commission Merchant**

41. Section 4d(a) of the Act, 7 U.S.C. § 6d(a) (2012), makes it unlawful for any person to be a Futures Commission Merchant (FCM) unless such person shall have registered with the Commission as an FCM.

42. During the Relevant Period, NAAM acted as an FCM by soliciting and accepting orders for Retail Commodity Transactions without registering with the Commission as an FCM. By doing so, it violated Section 4d(a) of the Act, 7 U.S.C. § 6d(a).

43. The foregoing acts, omissions, and failures of Bethel, Labadie, and other employees occurred within the scope of their employment, agency, or office with NAAM. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016), these acts, omissions, and failures are deemed those of NAAM, which is liable as principal for these acts, omissions, and failures.

### (4) Both Bethel and Labadie Controlled NAAM

44. Both Bethel and Labadie directly or indirectly controlled NAAM and knowingly induced, directly or indirectly, the acts constituting NAAM's violations of Section 4(a) and 4d(a) of the Act, 7 U.S.C. §§ 6(a) and 6d(a) (2012). Bethel and Labadie are therefore liable for those violations as controlling persons pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

45. Unless restrained and enjoined by the Court, there is a reasonable likelihood that Defendants NAAM, Bethel, and Labadie will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act.

### IV.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

46. Based on and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants NAAM, Bethel, and Labadie are permanently restrained, enjoined, and prohibited from directly or indirectly offering to enter into, executing, confirming the execution of, or conducting any office or business for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a

contract for the purchase or sale of a commodity for future delivery not conducted on or subject to the rules of a board of trade that has been designated by or registered with the Commission as a contract market, in violation of Section 4(a) and 4d(a), 7 U.S.C. § 6(a) and 6d(a) (2012).

47. NAAM, Bethel, and Labadie are also permanently restrained, enjoined, and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

    b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016)), for their own personal account or for any account in which they have a direct or indirect interest;

    c. Having any commodity interest traded on their behalf;

    d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and/or

    g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered,

12

exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

## V. RESTITUTION AND CIVIL MONETARY PENALTY

### A. Restitution

48. NAAM, Bethel, and Labadie shall pay restitution in the amount of six hundred forty eight thousand seven hundred fifty nine dollars and sixty cents ($648,759.60) (Restitution Obligation), plus post-judgment interest. Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012). NAAM, Bethel, and Labadie are jointly and severally liable for the Restitution Obligation.

49. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers, the Court appoints Melanie Damian, Esq., as Monitor. The Monitor shall collect restitution payments from the Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from her appointment as Monitor, other than actions involving fraud.

50. Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "North American Asset Management, LLC, Alexi Bethel, and Steven Labadie Settlement/Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order to the Monitor at the office of Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131, under cover letter that identifies the paying Defendant and the

name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

51.	The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in her discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC following the instructions for civil monetary penalty payments set forth in Paragraph 58 below.

52.	Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers to whom the Monitor, in her sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

53.	The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and

docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

54. The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

55. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

56. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.  Civil Monetary Penalty**

57. Defendants shall pay a civil monetary penalty in the amount of nine hundred seventy seven thousand four hundred thirty dollars and forty seven cents ($977,430.47) (CMP Obligation), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012). NAAM, Bethel, and Labadie are jointly and severally liable for the CMP Obligation.

58. Defendants shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> U.S. Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of Defendants' obligations to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

59. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Charles Marvine, Esq.
Deputy Director
Division of Enforcement
U.S. Commodity Futures Trading Commission
4900 Main Street, Suite 500
Kansas City, Missouri 64112

Notice to the Monitor:

Melanie Damian, Esq.
Damian & Valori LLP
1000 Brickell Avenue
Suite 1020
Miami, Florida 33131

Notice to NAAM, Bethel, and Labadie:

Russell L. Forkey, Esq.
Russell L. Forkey, P.A.
1075 Broken Sound Parkway, N.W.
Suite 103
Boca Raton, Florida 33487

All such notices to the Commission shall reference the name and docket number of this action.

60.  Change of Address/Phone:  Until such time as Defendants satisfy in full the Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone numbers and mailing addresses within ten (10) calendar days of the change.

61.  Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

62.  Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the holding.

63. Waiver: The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

64. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify, or for relief from, the terms of this Consent Order.

65. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

66. Authority: Both Bethel and Labadie hereby warrant that they are owners and principals of NAAM, NAAM has duly authorized this Consent Order, and Bethel and Labadie are duly empowered to sign and submit this Consent Order on NAAM's behalf.

67. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto

19

and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

68. Contempt: Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

69. Agreements and Undertakings: Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ORDERED to **GRANT** the Joint Motion for Entry of Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief (D.E. No. 24) and enter this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against North American Asset Management, LLC, Alexi Bethel, and Steven Labadie forthwith and without further notice. Any pending motions are **DENIED AS MOOT**. This case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this \_\_\_ day of June, 2017.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Goodman